ORIGINAL

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

AUG 05 2019

at 10 o'clock and 25 min. a M dep
SUE BEITIA, CLERK

KENJI M. PRICE  #10523
United States Attorney
District of Hawaii

MARK A. INCIONG   CA BAR #163443
Assistant U.S. Attorney
Room 6100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii   96850
Telephone:  (808) 541-2850
Facsimile:  (808) 541-2958
E-mail:  mark.inciong@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 17-00555-01 DKW |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OF |
| | ) | PLEA AGREEMENT |
| vs. | ) | |
| | ) | |
| JUSTIN K. WILCOX,        (1) | ) | |
| aka Justin KAANOI, | ) | Date:  August 5, 2019 |
| aka "Ali'i," | ) | Time:  9:30 a.m. |
| | ) | Judge:  Hon. Derrick K. Watson |
| Defendant. | ) | |
| | ) | |

## **MEMORANDUM OF PLEA AGREEMENT**

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the

UNITED STATES OF AMERICA, by its attorney, the United States Attorney for

the District of Hawaii, the Defendant, and his attorney, Thomas M. Otake, Esq.,

have agreed upon the following:

## THE CHARGES

1.      Defendant acknowledges that he has been charged in Counts 1, 12, 13 and 14 of the Indictment with violating Title 21, United States Code, Sections 846, 841(a)(1), 841(b)(1)(A) and 841(b)(1)(B), and Title 18, United States Code, Sections 2, 1956(a)(1)(A)(i), 1956(a)(1)(B)(i) and 1956(h).   The Indictment also places Defendant on notice of the First, Second and Third Forfeiture Allegations against him.

2.      Defendant has read the charges against him contained in the Indictment and those charges have been fully explained to him by his attorney.

3.      Defendant fully understands the nature and elements of the crimes with which he has been charged.

## THE AGREEMENT

4.      Defendant will enter voluntary pleas of guilty to Counts 1 and 14 of the Indictment which charge him with:   conspiracy to distribute and possess, with intent to distribute, fifty (50) grams or more of methamphetamine, its salts, isomers and salts of its isomers and five hundred (500) grams or more of cocaine, its salts, optical and geometric isomers, and salts of its isomers (Count 1); and, conspiracy to conduct financial transactions affecting interstate and foreign commerce which, in fact, involved the proceeds of a specified unlawful activity, specifically the

2

transfer, delivery and other disposition of United States currency that was the proceeds of the distribution of narcotics knowing that the property involved in the financial transactions represented the proceeds of that specified unlawful activity with the intent to promote the carrying on of that specified unlawful activity and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of that specified unlawful activity (Count 14).

The prosecution agrees to move to dismiss Counts 12 and 13 as well as the Second Forfeiture Allegation of the Indictment against Defendant at the time of sentencing. Prior to Defendant entering his guilty plea in this matter, the United States agrees to move to dismiss the Special Information, filed September 29, 2017, which alleged Defendant's prior State of Hawaii felony drug convictions.

5.     Defendant agrees that this Memorandum of Plea Agreement shall be filed and become part of the record in this case.

6.     Defendant enters his pleas because he is, in fact, guilty of conspiring to distribute and possess, with intent to distribute, fifty (50) grams or more of methamphetamine, its salts, isomers and salts of its isomers and five hundred (500) grams or more of cocaine, its salts, optical and geometric isomers, and salts of its

3

isomers as charged in Count 1 of the Indictment; and, conspiring to commit money laundering as charged in Count 14 of the Indictment.

Defendant agrees that $127,317 of the figure identified in paragraph (2)(a) of the First Forfeiture Allegation and paragraph (2) of the Third Forfeiture Allegation of the Indictment is subject to forfeiture as property constituting, or derived from, any proceeds which Defendant obtained, directly or indirectly, as a result of the offense alleged in Count 1 and/or as property used, or intended to be used, in any manner or part, to commit, or to facilitate, the commission of such offense, and is subject to forfeiture as property involved in the offense charged in Count 14 or property traceable to such property.

Defendant further agrees that his pleas are voluntary and not the result of any force or threats.   Defendant also understands that the offense to which he is pleading guilty in Count 1 requires the Government to prove beyond a reasonable doubt to a jury that he is responsible for conspiring to distribute and possess, with intent to distribute, 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers and/or five hundred (500) grams or more of cocaine, its salts, optical and geometric isomers, and salts of its isomers.

Defendant agrees that he is knowingly responsible for conspiring to distribute and possess, with intent to distribute, 50 grams or more of

4

methamphetamine, its salts, isomers, and salts of its isomers and/or five hundred

(500) grams or more of cocaine, its salts, optical and geometric isomers, and salts

of its isomers and hereby waives any and all right he has to have a jury determine

drug type and weight beyond a reasonable doubt.

## PENALTIES

7.      Defendant understands that the penalties for the offenses to which he

is pleading guilty include:

        a.      Count 1:   Imprisonment for not more than life, a fine of up to

$10,000,000, or both; a mandatory minimum term of imprisonment of ten (10)

years; and, a term of supervised release of not less than five (5) years and up to

life;

        b.      Count 14:   Imprisonment for not more than twenty (20) years,

a fine of not more than $500,000 or twice the value of the property involved in the

transaction(s), whichever is greater, or both; and, a term of supervised release of

not more than five (5) years;

        c.      In addition, the Court must impose a $100 special assessment as

to each count to which the Defendant is pleading guilty.   Defendant agrees to pay

$100 for each count to which he is pleading guilty to the District Court's Clerk's

Office, to be credited to said special assessments, before the commencement of any

portion of sentencing.   Defendant acknowledges that failure to make such full advance payment in a form and manner acceptable to the prosecution will allow, though not require, the prosecution to withdraw from this agreement at its option.

      d.    **Forfeiture**.   Pursuant to 21 U.S.C. § 853, forfeiture of any (1) property constituting, or derived from, proceeds the person obtained, directly or indirectly, as the result of a violation of the provisions of 21 U.S.C. §§ 801 et seq. or 21 U.S.C. §§ 951 et seq.; and (2) property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation. Pursuant to 18 U.S.C. § 982(a)(1), forfeiture of any property, real or personal, involved in an offense in violation of 18 U.S.C. § 1956, 1957, or 1960, and property traceable to such property.

      e.    At the discretion of the Court, Defendant may also be denied any or all federal benefits, as that term is defined in 21 U.S.C. § 862, (a) for up to five years if this is Defendant's first conviction of a federal or state offense consisting of the distribution of controlled substances, or (b) for up to ten years if this is Defendant's second conviction of a federal or state offense consisting of the distribution of controlled substances.   If this is Defendant's third or more conviction of a federal or state offense consisting of the distribution of controlled

6

substances, the Defendant is permanently ineligible for all federal benefits, as that term is defined in 21 U.S.C. § 862(d).

## **FACTUAL STIPULATIONS**

8.     Defendant admits the following facts and agrees that they are not a detailed recitation, but merely an outline of what happened in relation to the charges to which Defendant is pleading guilty:

a.     Beginning not later than October, 2015, and continuing up to and including June 17, 2016, Defendant JUSTIN K. WILCOX, aka Justin Kaanoi, aka "Ali'i, agreed with SHANE KAUI, DELANEO KAWIKA PUHA, and others, to distribute and possess, with intent to distribute, methamphetamine and cocaine, Schedule II controlled substances, in the District of Hawaii.

b.     In furtherance of the conspiracy, WILCOX obtained large quantities of methamphetamine from a mainland source of supply.   After the methamphetamine was shipped to Hawaii, WILCOX enlisted the assistance of others including SHANE KAUI and DELANEO PUHA to distribute and/or store the drugs.   Those individuals, in turn, utilized additional persons to further distribute and/or store the drugs.

c.     Prior to December, 2015, WILCOX supplied PUHA with large amounts of methamphetamine in exchange for money on not less than two

7

occasions.   On at least one occasion, the drugs were "fronted" by WILCOX to

PUHA meaning PUHA would pay WILCOX at a later time after selling at least

some of the methamphetamine.   PUHA then distributed the drugs to KEALOHA,

PA'A'AINA, MARTIN, LONO and others who, in turn, further distributed the

methamphetamine.

        d.     In April, 2016, KAUI began supplying PUHA directly with

multi-pound quantities of methamphetamine and kilogram quantities of cocaine

provided by WILCOX for $10,000 per pound and $40,000 per pound, respectively.

        e.     In furtherance of the conspiracy, WILCOX and KAUI utilized

Kaneohe Self Storage locker T4 in Kaneohe, Hawaii to store and conceal

methamphetamine intended for later distribution as well as cash drug proceeds

from the sale of the methamphetamine.   Both WILCOX and KAUI had keys to

access the locker.

        f.     On June 16, 2016, PUHA was arrested by the Drug

Enforcement Administration (DEA).   As a result, 1,728 grams of

methamphetamine and 1,393 grams of cocaine supplied to PUHA in furtherance of

the conspiracy were seized from a residence in Ewa Beach, Hawaii.   Also seized

was $146,800 in drug proceeds, at least some of which was intended to be paid to

8

WILCOX for additional drugs.   (Laboratory analysis of the seized drugs is more specifically described in paragraph 10(b), below.)

g.   On June 17, 2016, KAUI was arrested by the DEA which then seized 2,152 grams of methamphetamine stored in Kaneohe Self Storage locker T4, referenced above.   (Laboratory analysis of the seized drugs is more specifically described in paragraph 10(b), below.)

h.   At all relevant times discussed above, WILCOX knew that the substance(s) he distributed and possessed, with the intent to distribute and those which he conspired to distribute and possess, with intent to distribute, were all, in fact, methamphetamine or cocaine.

i.   Beginning not later than January 1, 2015, and continuing up to and including December 31, 2016, JUSTIN K. WILCOX, aka Justin KAANOI, aka "Ali'i", agreed with SHANE KAUI and DELANEO KAWIKA PUHA to commit money laundering by conducting financial transactions affecting interstate and foreign commerce which involved the cash proceeds of their drug distribution activities.

j.   WILCOX, along with KAUI and PUHA, transferred, delivered, deposited and otherwise disposed of United States currency knowing it was proceeds of the distribution of narcotics with the intent to both promote the

9

continuation of that drug distribution activity and to conceal and disguise the nature, location, source, ownership or control of the cash drug proceeds.

k.     Over the course of the money laundering conspiracy, WILCOX deposited drug proceeds into his "Armed & Dangerous" business bank accounts as well as his personal bank accounts.   WILCOX made the deposits into his business accounts in an attempt to conceal and disguise the true source and nature of the cash drug proceeds deposited.   WILCOX used his personal accounts for airfare and hotel stays for travel to and from Las Vegas, Nevada, payment for storage facilities, shipping costs and other expenses needed to promote the drug distribution conspiracy.

l.     WILCOX utilized at least a portion of the cash drug proceeds he received from the sale of narcotics to purchase additional supplies of drugs in order to further promote and continue the drug distribution conspiracy.

m.     At all relevant times discussed above, WILCOX knew that the cash he received as payment from PUHA, KAUI and others constituted drug proceeds from the sale of narcotics in furtherance of the conspiracy.

9.     Pursuant to CrimLR32.1(a) of the Local Rules of the United States District Court for the District of Hawaii, the parties agree that the charge to which the Defendant is pleading guilty adequately reflects the seriousness of the actual

10

offense behavior and that accepting this Agreement will not undermine the statutory purposes of sentencing.

## SENTENCING STIPULATIONS

10.     Pursuant to CrimLR32.1(b) of the Local Rules of the United States District Court for the District of Hawaii and Section 6B1.4 of the Sentencing Guidelines, the parties stipulate to the following for the purpose of the sentencing of Defendant in connection with this matter:

a.     The parties stipulate to the facts as set forth in paragraph 8 of this agreement.

b.     The parties further agree that Defendant is responsible for not less than 3,880 grams of actual methamphetamine (the total amount seized on June 16 and 17, 2016 referenced in paragraphs 8(f) and (g), above); and 1,393 grams of cocaine (the total amount seized on June 16, 2016 referenced in paragraph 8(f), above).   The results of laboratory analysis conducted on the substances seized by the DEA are as follows:

| DEA Ex.#: | Controlled Substance: | Net Wgt.: | Purity: |
|-----------|----------------------|-----------|---------|
| 13 | Cocaine Hydrochloride | 1393 grams | n/a |
| 14 | d-Methamphetamine Hydrochloride | 1728 grams | 100% |
| 17 | d-Methamphetamine Hydrochloride | 2152 grams | 100% |

11

The foregoing chemical analysis was conducted by the DEA Southwest Laboratory.  Methamphetamine and cocaine are Schedule II controlled substances. D-Methamphetamine Hydrochloride is a methamphetamine salt and a Schedule II controlled substance.  The substance in DEA Exhibits 14 and 17 is "ice" as that term is defined in Note C to the Drug Quantity Table in Guidelines Section 2D1.1(c).

   c. As of the date of this agreement, it is expected that the Defendant will enter a plea of guilty prior to the commencement of trial, will truthfully admit his involvement in the offense and related conduct, and will not engage in conduct that is inconsistent with such acceptance of responsibility.  If all of these events occur, and the Defendant's acceptance of responsibility continues through the date of sentencing, a downward adjustment of 2 levels for acceptance of responsibility will be appropriate.  See U.S.S.G. § 3E1.1(a) and Application Note 3.

   d. The United States Attorney agrees that Defendant's agreement herein to enter into a guilty plea constitutes notice of intent to plead guilty in a timely manner, so as to permit the government to avoid preparing for trial as to Defendant.  Accordingly, the United States Attorney anticipates moving in the Government's Sentencing Statement for a one-level reduction in sentencing

offense level pursuant to Guideline § 3E1.1(b)(2), if Defendant is otherwise

eligible.   The Defendant understands that notwithstanding its present intentions,

and still within the Agreement, the prosecution reserves the rights (1) to argue to

the contrary in the event of receipt of new information relating to those issues, and

(2) to call and examine witnesses on those issues in the event that either the

probation office finds to the contrary of the prosecution's intentions or the Court

requests that evidence be presented on those issues.

11.    The parties agree that notwithstanding the parties' Agreement herein,

the Court is not bound by any stipulation entered into by the parties but may, with

the aid of the presentence report, determine the facts relevant to sentencing.   The

parties understand that the Court's rejection of any stipulation between the parties

does not constitute a refusal to accept this Agreement since the Court is expressly

not bound by stipulations between the parties.

12.    The parties represent that as of the date of this agreement there are no

material facts in dispute.

## APPEAL/COLLATERAL REVIEW

13.    The Defendant is aware that he has the right to appeal his convictions

and the sentences imposed.   The Defendant knowingly and voluntarily waives the

right to appeal, except as indicated in subparagraph "b" below, his conviction and

any sentence within the Guidelines range as determined by the Court at the time of

sentencing, and any lawful restitution order imposed, or the manner in which the

sentence or restitution order was determined, on any ground whatsoever, in

exchange for the concessions made by the prosecution in this Agreement.   The

Defendant understands that this waiver includes the right to assert any and all

legally waivable claims.

        a.     The Defendant also waives his right to challenge his conviction

or sentence or the manner in which it was determined in any collateral attack,

including, but not limited to, a motion brought under Title 28, United States Code,

Section 2255, except that Defendant may make such a challenge based on a claim

of ineffective assistance of counsel.

        b.     If the Court imposes a sentence greater than specified in the

guideline range determined by the Court to be applicable to the Defendant, the

Defendant retains the right to appeal the portion of his sentence greater than

specified in that guideline range and the manner in which that portion was

determined under Section 3742 and to challenge that portion of the sentence in a

collateral attack.

//

//

14

c.    The prosecution retains its right to appeal the sentence and the

manner in which it was determined on any of the grounds stated in Title 18, United

States Code, Section 3742(b).

## **FINANCIAL DISCLOSURE**

14.    In connection with the collection of restitution or other financial

obligations that may be imposed upon him, the Defendant agrees as follows:

a.    The Defendant agrees to fully disclose all assets in which he

has any interest or over which he exercises control, directly or indirectly, including

any assets held by a spouse, nominee, or third party.   The Defendant understands

that the United States Probation Office (USPO) will conduct a presentence

investigation that will require the Defendant to complete a comprehensive financial

statement.   To avoid the requirement of the Defendant completing financial

statements for both the USPO and the government, the Defendant agrees to

truthfully complete a financial statement provided to the Defendant by the United

States Attorney's Office.   The Defendant agrees to complete the disclosure

statement and provide it to the USPO within the time frame required by the United

States Probation officer assigned to the Defendant's case.   The Defendant

understands that the USPO will in turn provide a copy of the completed financial

statement to the United States Attorney's Office.   The Defendant agrees to

15

provide written updates to both the USPO and the United States Attorney's Office regarding any material changes in circumstances, which occur prior to sentencing, within seven days of the event giving rise to the changed circumstances. The Defendant's failure to timely and accurately complete and sign the financial statement, and any written update thereto, may, in addition to any other penalty or remedy, constitute the Defendant's failure to accept responsibility under U.S.S.G § 3E1.1.

      b.    The Defendant expressly authorizes the United States Attorney's Office to obtain his credit report. The Defendant agrees to provide waivers, consents, or releases requested by the United States Attorney's Office to access records to verify the financial information, such releases to be valid for a period extending 90 days after the date of sentencing. The Defendant also authorizes the United States Attorney's Office to inspect and copy all financial documents and information held by the USPO.

      c.    Prior to sentencing, the Defendant agrees to notify the Financial Litigation Unit of the U.S. Attorney's Office before making any transfer of an interest in property with a value exceeding $1,000 owned directly or indirectly, individually or jointly, by the Defendant, including any interest held or owned under any name, including trusts, partnerships, and corporations.

16

## FORFEITURE

15.     As part of his acceptance of responsibility and pursuant to 21 U.S.C. §
853 and 18 U.S.C. § 982(a)(1), the defendant agrees as follows:

      a.      The defendant consents to the entry of a money judgment in the
amount of $127,317 in United States currency.   The defendant acknowledges that
$127,317 is (1) property constituting, or derived from, proceeds the person
obtained, directly or indirectly, as the result of a violation of the provisions of 21
U.S.C. §§ 801 et seq. or 21 U.S.C. §§ 951 et seq.; and/or (2) property used, or
intended to be used, in any manner or part, to commit, or to facilitate the
commission of, such violation.   The defendant also acknowledges that $127,317 is
property, real or personal, involved in an offense in violation of 18 U.S.C. §§ 1956,
1957, or 1960, and property traceable to such property.

      b.      The defendant knowingly and voluntarily waives and agrees to
waive any and all constitutional, statutory, and other challenges to the forfeiture on
any and all grounds, including that the forfeiture constitutes an excessive fine or
punishment under the Eighth Amendment.   The defendant waives all
constitutional, legal, and equitable defenses to the entry of and collection of the
Forfeiture Money Judgment.   The defendant knowingly and voluntarily waives
any right to a jury trial on the forfeiture of property.

c.     The defendant agrees to consent promptly upon request to the entry of any orders deemed necessary by the government or the Court to complete the forfeiture and disposition of the property.   The defendant waives the requirements of Rules 32.2 and 43(a) of the Federal Rules of Criminal Procedure regarding notice of forfeiture in the charging instrument, announcement of forfeiture at sentencing, and incorporation of the forfeiture in the judgment.   The defendant acknowledges that he understands that the forfeiture of the property, if the government elects to conduct the forfeiture criminally, will be part of the sentence imposed upon the defendant in this case and waives any failure by the Court to advise the defendant of this, pursuant to Rule 11(b)(1)(J) of the Federal Rules of Criminal Procedure, during the change of plea hearing.   Pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure, the defendant consents to the Forfeiture Money Judgment becoming final as to the defendant when entered.

d.     The defendant understands that the forfeiture of the forfeitable property does not constitute and will not be treated as satisfaction, in whole or in part, of any fine, restitution, reimbursement of cost of imprisonment, or any other monetary penalty this Court may impose upon the defendant in addition to the forfeiture.

18

e.     Payment of the Forfeiture Money Judgment shall be made by certified or bank check payable to the U.S. Department of the Treasury.   On or before the date he enters his plea of guilty pursuant to this agreement, the defendant shall cause said check to be hand-delivered to the Asset Forfeiture Unit, United States Attorney's Office, District of Hawaii, PJKK Federal Building, 300 Ala Moana Boulevard, Room 6-100, Honolulu, Hawaii 96850, with the criminal docket number noted on the face of the check.

f.     If the Forfeiture Money Judgment is not paid on or before the date the defendant enters his plea of guilty pursuant to this agreement, interest shall accrue at the judgment rate of interest (as defined by 28 U.S.C. § 1961) on any unpaid portion thereof at the judgment rate of interest from that date. Furthermore, if the defendant fails to pay any portion of the Forfeiture Money Judgment on or before the date of his guilty plea, the defendant consents to the forfeiture of any other property alleged to be subject to forfeiture in the Indictment, including substitute assets, in full or partial satisfaction of the money judgment, and remains responsible for the payment of any deficiency until the Forfeiture Money Judgment, including any accrued interest, is paid in full.

//

//

19

## IMPOSITION OF SENTENCE

16.    The Defendant understands that the District Court in imposing sentence will consider the provisions of the Sentencing Guidelines.   The Defendant agrees that there is no promise or guarantee of the applicability or nonapplicability of any Guideline or any portion thereof, notwithstanding any representations or predictions from any source.

17.    The Defendant understands that this Agreement will not be accepted or rejected by the Court until there has been an opportunity by the Court to consider a presentence report, unless the Court decides that a presentence report is unnecessary.   The Defendant understands that the Court will not accept an agreement unless the Court determines that the remaining charges adequately reflect the seriousness of the actual offense behavior and accepting the agreement will not undermine the statutory purposes of sentencing.

## WAIVER OF TRIAL RIGHTS

18.    Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.    If Defendant persisted in a plea of not guilty to the charges against him he would have the right to a public and speedy trial.   The trial could be either a jury trial or a trial by a judge sitting without a jury.   The Defendant has

a right to a jury trial.   However, in order that the trial be conducted by the judge sitting without a jury, the Defendant, the prosecution and the judge all must agree that the trial be conducted by the judge without a jury.

      b.     If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random.   Defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges.   The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty.   The jury would be instructed that the Defendant is presumed innocent, and that it could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt.

      c.     If the trial is held by a judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not he or she was persuaded of the Defendant's guilt beyond a reasonable doubt.

      d.     At a trial, whether by a jury or a judge, the prosecution would be required to present its witnesses and other evidence against the Defendant. Defendant would be able to confront those prosecution witnesses and her attorney would be able to cross-examine them.   In turn, Defendant could present witnesses and other evidence on her own behalf.   If the witnesses for the Defendant would

not appear voluntarily, he could require their attendance through the subpoena power of the Court.

        e.     At a trial, the Defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from her refusal to testify.

        f.     At a trial, Defendant would have a right to have the jury determine beyond a reasonable doubt the quantity and weight of the controlled substances charged in the indictment.

     19.    Defendant understands that by pleading guilty, he is waiving all of the rights set forth in the preceding paragraph.   Defendant's attorney has explained those rights to him and the consequences of the waiver of those rights.

## USE OF PLEA STATEMENTS

     20.    If, after signing this Agreement, the Defendant decides not to plead guilty as provided herein, or if the Defendant pleads guilty but subsequently makes a motion before the Court to withdraw his guilty plea and the Court grants that motion, the Defendant agrees that any admission of guilt that he makes by signing this Agreement or that he makes while pleading guilty as set forth in this Agreement may be used against him in a subsequent trial if the Defendant later proceeds to trial.   The Defendant voluntarily, knowingly, and intelligently waives

22

any protection afforded by Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence regarding the use of statements made in this Agreement or during the course of pleading guilty when the guilty plea is later withdrawn.   The *only* exception to this paragraph is where the Defendant fully complies with this Agreement but the Court nonetheless rejects it. Under those circumstances, the United States may not use those statements of the Defendant for any purpose.

21.    The Defendant understands that the prosecution will apprise the Court and the United States Probation Office of the nature, scope and extent of the Defendant's conduct regarding the charges against him, related matters, and any matters in aggravation or mitigation relevant to the issues involved in sentencing.

22.    Defendant understands that the prosecution will apprise the Court and the United States Probation Office of the nature, scope and extent of Defendant's conduct regarding the charges against him, related matters, and any matters in aggravation or mitigation relevant to the issues involved in sentencing.

## **COOPERATION**

23.    The Defendant agrees that he will fully cooperate with the United States.

a.      The Defendant agrees to testify truthfully at any and all trials, hearings, or any other proceedings at which the prosecution requests him to testify, including, but not limited to, any grand jury proceedings, trial proceedings involving codefendants and others indicted later in the investigation, and related civil proceedings.

b.      The Defendant agrees to be available to speak with law enforcement officials and to representatives of the United States Attorney's Office at any time and to give truthful and complete answers at such meetings, but he understands he may have his counsel present at those conversations, if he so desires.

c.      The Defendant agrees he will not assert any privilege to refuse to testify at any grand jury, trial, or other proceeding, involving or related to the crimes in this Indictment or any subsequent charges related to this investigation, at which the prosecution requests him to testify.

d.      Pursuant to Section 1B1.8(a) of the Sentencing Guidelines, the prosecution agrees that self-incriminating information provided pursuant to this Agreement to cooperate will not be used in determining the applicable guideline range, except as may be provided in this Agreement and under Section 1B1.8(b) of the Sentencing Guidelines.

24

24.    In the event that the Defendant does not breach any of the terms of this Agreement but the Court nonetheless refuses to accept the Agreement after Defendant has made statements to law enforcement authorities or representatives of the United States Attorney's Office pursuant to this Agreement, the prosecution agrees not to use said statements in its case in chief in the trial of the Defendant in this matter.   Defendant understands that this does not bar the use of information and evidence derived from said statements or prohibit the use of the statements by the prosecution in cross examination or rebuttal.

25.    Pursuant to Guideline Section 5K1.1 and Rule 35(b), Federal Rules of Criminal Procedure, the prosecution may move the Court to depart from the Guidelines on the ground that the Defendant has provided substantial assistance to authorities in the investigation or prosecution of another person who has committed an offense.   Pursuant to Title 18, United States Code, Section 3553(e), the prosecution may also move the Court to impose a sentence below the level established by statute as a minimum sentence on the ground that Defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense.   Defendant understands that:

a.    The decision as to whether to make such a request or motion is entirely up to the prosecution.

25

b.      This Agreement does not require the prosecution to make such a request or motion.

c.      This Agreement confers neither any right upon the Defendant to have the prosecution make such a request or motion, nor any remedy to Defendant in the event the prosecution fails to make such a request or motion.

d.      Even in the event that the prosecution makes such a request or motion, the Court may refuse to depart from the Guidelines or to impose a sentence below the minimum level established by statute.

26.   The Defendant and his attorney acknowledge that, apart from any written proffer agreements, if applicable, no threats, promises, agreements or conditions have been entered into by the parties other than those set forth in this Agreement, to induce the Defendant to plead guilty.   Apart from any written proffer agreements, if applicable, this Agreement supersedes all prior promises, agreements or conditions between the parties.

27.   To become effective, this Agreement must be signed by all signatories listed below.

//

//

//

26

28.     Should the Court refuse to accept this Agreement, it is null and void

and neither party shall be bound thereto.

DATED: _____ AUG 05 , 2019, at Honolulu, Hawaii.


AGREED:

KENJI M. PRICE
United States Attorney
District of Hawaii


_____
MICAH W.J. SMITH
Deputy Chief, Criminal Division


_____
JUSTIN K. WILCOX
aka Justin Kaanoi, aka "Ali'i"
Defendant


_____
MARK A. INCIONG
Assistant U.S. Attorney


_____
THOMAS M. OTAKE
Attorney for Defendant


27