IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 17-cr-00555-DKW-1 |
| Plaintiff, | |
| v. | **ORDER DENYING DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEA** |
| JUSTIN K. WILCOX aka JUSTIN KAANOI, | |
| Defendant. | |

## INTRODUCTION

On August 5, 2019, pursuant to a plea agreement, Defendant Justin Wilcox pled guilty to Counts 1 and 14 of the Indictment, which charged him with drug distribution-related offenses.   Wilcox now seeks to withdraw that plea on the eve of sentencing, claiming that: (1) inadequate communication from former counsel left him insufficiently informed about his proffer and plea agreements with the Government; and (2) former counsel "grossly mischaracterized" his likely sentence.   Because, as explained below, neither argument withstands scrutiny, Wilcox's Motion to Withdraw his Guilty Plea (Dkt. No. 533) is DENIED.

# BACKGROUND

## I.   Indictment and Initial Representation

On September 27, 2017, a grand jury returned an indictment charging Wilcox[1] with (1) conspiracy to distribute and to possess with the intent to distribute methamphetamine, cocaine, and their derivatives; and (2) money laundering.   Dkt. No. 8 at 2, 7–8 (Counts 1 and 14, respectively).   Shortly thereafter, Wilcox retained Thomas A. Otake as his attorney.   Dkt. No. 106; *see also* Dkt. No. 533-2 at 26; Dkt. No. 548-1.

Wilcox represents that, despite his many attempts to meet with Otake "[d]uring the one-year period from November 2, 2017 to November 30, 2018," they met just once—in May 2018.   Dkt. No. 533-1 at 3.   Wilcox further asserts that, during that same one-year period, he was not provided with copies of all relevant discovery, including discs containing recordings pertinent to his case.   *Id.* at 4; Dkt. No. 533-2 at 5–6; *see also* Dkt. No. 533-3 (emails between Wilcox and Otake concerning meetings and materials).   Otake does not agree.   He represents that, although he cannot provide the specific dates and times,[2] he met "with Wilcox extensively to review the evidence[3] and discuss [Wilcox's] decision to

---

[1]The same indictment charged numerous other co-conspirators as well.

[2]It may be that these specifics are no longer available to Otake because of the transfer of his case files to Wilcox's present counsel in January 2020.

[3]Although Wilcox denies having been provided copies of the discovery discs, he acknowledges that Otake brought them to a meeting on one occasion and that they listened to some of the audio

cooperate and plead guilty."   Dkt. No. 548-1 at 2.   He estimates having met with Wilcox "more than a dozen" times prior to Wilcox's change of plea.   *Id.*

## II.   <u>Cooperation/Proffer</u>

In December 2018, during an in-person meeting, Otake explained to Wilcox the possibility of cooperation and a plea.   Dkt. No. 533-2 at 10.   While Wilcox alleges this was the only meeting with Otake where cooperation and a plea were discussed, *see id.*, Otake represents he "met with Wilcox on multiple occasions" and that, during those meetings, he "explained the pros and cons of cooperation" without pressuring Wilcox into making any particular decision.   Dkt. No. 548-1 at 3.

At the December 2018 meeting (or another pre-cooperation meeting), Otake provided Wilcox with an estimate of how the sentencing guidelines might apply to him: a rough calculation showed an offense level of 35.   Dkt. No. 533-1 at 7; Dkt. No. 533-2 at 10; Dkt. No. 533-4.   This estimate included a line item for "good arguments to avoid relevant conduct," "enhancements = 2 level leader/organizer?," and "crim history III?"   Dkt. No. 533-4.   The estimate did not specify a number of downward departure levels for cooperation.   *Id.*

---

recordings "for a few minutes."   Dkt. No. 565-3 at 3.   Otake represents that they listened to the pertinent audio evidence "repeatedly" during his multiple visits.   Dkt. No. 548-1 at 2.

Wilcox notes this offense level estimate did not include more than half the weight of the methamphetamine charged in Count 1 of the Indictment.   *Compare* Dkt. No. 8 at 1 (alleging the conspiracy was responsible for 8,762 grams of methamphetamine) *with* Dkt. No. 533-4 (using only 3,880 grams of methamphetamine to estimate Wilcox's offense level).   Wilcox maintains that this is so because he was not responsible for some of the drugs seized in relation to this case, most notably 4,532 grams of methamphetamine recovered from co-Defendant Shane Kaui's vehicle on June 17, 2016.   Dkt. No. 533-2 at 3.   Wilcox represents that, based on Otake's estimate, he was under the impression that he would not be held responsible for the drugs seized from Kaui's vehicle and might get an even better deal once cooperation was factored in.   Dkt. No. 533-2 at 3–4; *see also* Dkt. No. 565 at 9; Dkt. No. 565–3 at 3–4.   Notably, Otake represents that he "never made Wilcox any assurances as to whether a final presentence investigation report would or would not" hold Wilcox accountable for the disputed drug quantities. Dkt. No. 548-1 at 4.

Opting to cooperate, Wilcox entered into a proffer agreement with the Government in December 2018.   Dkt. No. 533-2 at 12–13.   He subsequently participated in proffer sessions on December 7, 2018, March 28, 2019, and November 8, 2019.   Dkt. No. 533-1 at 10; *see also* Dkt. No. 533-12 (report from

December 7, 2018 proffer session); Dkt. No. 533-13 (report from March 28, 2019

proffer session).

## III.    <u>Plea Agreement</u>

In July 2019, Otake met with Wilcox to review the terms of the

Government's proposed Plea Agreement.    Dkt. No. 533-2 at 15.    While Wilcox

alleges this is the only time Otake met with him to discuss the contents of the Plea

Agreement, Otake represents that he "discussed the plea agreement with Wilcox on

multiple visits prior to Wilcox's change of plea hearing."    Dkt. No. 548-1 at 5.

Regardless, Wilcox and Otake agree that they worked together to develop

proposed revisions to the Plea Agreement to pursue in negotiations with the

Government.    Dkt. No. 533-2 at 16–19; Dkt. No. 548-1 at 5.

Otake asserts that, prior to the change of plea hearing, he "thoroughly

reviewed the final version of the plea agreement" with Wilcox, "clearly

communicat[ing] . . . which changes the Government had and had not agreed to

make."  Dkt. No. 548-1 at 5.    Wilcox claims no such review occurred, leaving

him in the dark as to which, if any, revisions had been agreed to.    Dkt. No. 533-2

at 19–21.    In fact, Wilcox claims he first saw the final Plea Agreement with

whatever revisions had been made just five minutes before the change of plea

hearing, and he had no opportunity to consult with Otake about the final agreement

prior to the hearing.    *Id.*    Moreover, as a result of this timing, Wilcox claims he

did not read the final agreement in full and only signed it because he felt

"pressured . . . because the hearing was starting."   *Id.* at 21.

## IV.   Change of Plea Hearing

Wilcox's change of plea hearing occurred on August 5, 2019 before the

undersigned.   Dkt. No. 343.   At the outset, he took an oath to answer questions

truthfully and acknowledged the absence of any impairment that might prevent him

from doing so.   *See* Dkt. No. 527 (transcript of the change of plea hearing).   More

specifically, after attesting he was free of the effects of any substance or alcohol,

Wilcox responded as follows:

| | |
|---|---|
| THE COURT: | What is your understanding of the purpose of this morning's hearing? |
| WILCOX: | The purpose of this morning's hearing is for me to plead out to the charges at hand, take responsibility for my actions. |
| THE COURT: | Have you had enough time to discuss that decision, whether or not to plead guilty, as well as this case generally with Mr. Otake? |
| WILCOX: | Yes. |
| THE COURT: | Are you satisfied with his representation of you thus far in this case? |
| WILCOX: | Yes. |

*Id.* at 5–6.   Wilcox then confirmed that he intended to plead guilty to Counts 1 and

14 of the Indictment and that no one had threatened or coerced his plea, nor had

anyone made any promises or assurances to induce his plea, other than the

promises the Government had made in his written Plea Agreement.   *Id.* at 6.

6

The potential penalties—including a mandatory minimum term of ten years' imprisonment, a maximum term of life, and mandatory minimum term of five years of supervised release for Count 1—were explained to Wilcox, and he acknowledged that he understood those potential penalties. *Id.* at 7–8. The Court then inquired as to Wilcox's familiarity with the Plea Agreement:

| THE COURT: | Now, you've entered into a plea agreement with the United States; is that true? |
|---|---|
| WILCOX: | Yes. |
| THE COURT: | Have you read that document, the plea agreement, in full? |
| WILCOX: | Yes, I did. |
| THE COURT: | And are you confident, sir, that you understand that [*sic*] each of its terms? |
| WILCOX: | Yes. |
| THE COURT: | And have you discussed that document, the plea agreement, with Mr. Otake? |
| WILCOX: | Yes. |

. . .

| THE COURT: | Does the plea agreement, Mr. Wilcox, reflect the entire agreement that you have with the United States? |
|---|---|
| WILCOX: | Yes. |
| THE COURT: | Another way of saying something similar is, did the government make any verbal or oral promises to you that they did not put into the text of the plea agreement? |
| WILCOX: | No. |

*Id.* at 8–9. The Government's attorney then described the essential terms of the agreement. *Id.* at 10–20. The Court confirmed that Wilcox understood the rights he was waiving by pleading guilty pursuant to the Plea Agreement and also

7

confirmed that he wished to proceed knowing he was waiving those rights   *Id.* at 20–25.

The Court then engaged Wilcox in an extended colloquy regarding the sentencing process:

| | |
|---|---|
| THE COURT: | With regard to sentencing, United States law establishes detailed sentencing guidelines that apply to those who are convicted of, which includes those who plead guilty to[,] federal crimes.   The sentencing judge, most likely myself in this case, must consider those guidelines, and additionally must consider the statutory sentencing factors that are described at Title 18 of the United States Code, Section 3553(a).   Although the sentencing judge must consider these sentencing guidelines, they are maybe what the name might imply to you.   They are guidelines, which means that they are advisory on this Court only, do you understand that? |
| WILCOX: | Yes. |
| THE COURT: | Have you discussed with Mr. Otake how the sentencing guidelines might apply to your case? |
| WILCOX: | Yes. |
| THE COURT: | Now, I purposefully used the term "might."   And the reason for that is, as I sit here today, without the benefit of a presentence investigation and investigation report, I cannot determine with precision how the sentencing guidelines apply to your case, and I think everyone in this courtroom is in that exact same situation.   However, once that report is prepared and circulated and both Mr. Otake as well as [the Government's attorney] have an opportunity to comment on, as well as file objections to the contents of that report, if they wish to do so, and the Court applies those guidelines and applies the statutory sentencing factors that I mentioned a minute ago, the 3553(a) |

8

|  | factors, I could impose a sentence that is either more or less severe than what the guidelines call for.   Do you understand that? |
|---|---|
| WILCOX: | Yes. |
| THE COURT: | Do you understand further, sir, that if the Court were to impose a sentence that is more severe than what you expect or more severe than what the guidelines call for, you will nonetheless be bound by your plea and plea agreement and will have no right to withdraw from either on the sentencing basis?   Do you understand that? |
| WILCOX: | Yes. |
| THE COURT: | Despite any discussions you may have had with Mr. Otake, with [the Government's attorney], or with anyone else regarding the type or duration of the sentence you are likely to receive, or with respect to any sentencing recommendation that they may wish to provide to the Court, I'm not bound by those discussions nor am I bound by any recommendations that are provided to me, and I could impose a sentence more severe than what you expect up to the maximum permitted by law. Do you understand that? |
| WILCOX: | Yes. |
| THE COURT: | Has anyone made any promises to you, sir, with regard to what your seasons [*sic* sentence] will be? |
| WILCOX: | No. |
| THE COURT: | Do you understand that at the time of sentencing there is no limitation on the information that the Court can consider regarding your background, your character, and your conduct except that the information the Court uses must be sufficiently reliable? |
| WILCOX: | Yes. |

*Id.* at 25–27.

The Government's attorney then set forth the elements it would have to prove at trial and the evidence it would introduce to prove those elements.   *Id.* at

28–34.   Once Wilcox described, in his own words, the conduct he engaged in that made him guilty of Counts 1 and 14 of the Indictment, he formally entered his plea of guilty to each.   *Id.* at 34-37.

## V.   **After the Change of Plea Hearing**

After the August 5, 2019 change of plea hearing, Wilcox avers he engaged in one additional proffer session with the Government, which took place on November 8, 2019.   Dkt. No. 533-2 at 25.   During that session, he claims to have been asked about Wayne Miller, the person who had retained Otake on Wilcox's behalf and who was an alleged associate of another of Otake's clients.   *Id.* at 25–27.   Concerned this line of inquiry might present a conflict of interest for Otake, Wilcox stopped the proffer session.   *Id.* at 27.   Upon speaking to Otake, Wilcox claims his suspicions were confirmed in that he "was advised" of a possible conflict.   *Id.*   Otake avers that there was no potential conflict, he did not advise Wilcox to the contrary, and, to the extent Wilcox was asked to proffer information that might harm any of his other clients, Otake never discouraged Wilcox from doing so.   Otake, in fact, advised Wilcox to offer whatever information he had that "may help his situation."   Dkt. No. 548-1 at 7.

Otake and Wilcox dispute whether Otake withdrew of his own accord or was asked to do so by Wilcox.   Dkt. No. 548-1 at 6–7.   Dkt. No. 533-2 at 26–28.   Regardless, Otake moved to withdraw as counsel for Wilcox on January 9, 2020.

Dkt. No. 422.   That motion was granted, and Wilcox's present counsel, Mark S.

Kawata, succeeded Otake.   *See id.*; *see also* Dkt. No. 425 (order authorizing

withdrawal and substitution).

## VI.   Presentence Investigation Report

On October 4, 2019, the United States Probation Office issued the first draft

presentence investigation report ("PSR") as to Wilcox.   Dkt. No. 401.   That draft

concluded Wilcox's offense conduct included possession and possession with the

intent to distribute 8,412 grams of methamphetamine, which included the drugs

seized from co-Defendant's Kaui's vehicle and co-Defendant Pa'a'aina's

residence.   *Id.* at 15.   This finding, along with others in the report, resulted in a

base offense level of 38.   *Id.* at 17.

On November 12, 2019, Wilcox received from Otake a copy of the first draft

PSR.   Dkt. No. 533-2 at 28.[4]   No objection to the draft was offered by the defense

within the 14 days allowed, *see* Fed. R. Crim. P. 32(f)(1); *see also* Dkt. No. 401-1

(notice to attorneys explaining timeline for objecting to findings in the PSR), or at

any time thereafter until February 16, 2021, the night before Wilcox's sentencing

hearing.   Dkt. No. 519.   At that time, Wilcox claimed that he was not responsible

---

[4]Despite acknowledging the potential penalties for pleading guilty both in the Plea Agreement
and at the change of plea hearing, and having been provided the rough calculation of offense
level sketched out by Otake (attached as Exhibit 2 to his motion), Wilcox asserts that, prior to
receiving the draft PSR, he "had no idea as to the possible sentence."   Dkt. No. 533-2 at 27.

for the drugs seized from co-Defendant Kaui's vehicle or from co-Defendant Pa'a'aina's residence and that the PSR therefore overstated the applicable offense level and resulting sentencing guideline range.[5]  *Id.* at 5–7.

## VII.  <u>Motion to Withdraw Guilty Plea</u>

Roughly one month later, on March 23, 2021, Wilcox filed the present motion to withdraw his guilty plea.   Dkt. No. 533.   He argues that due to deficiencies in communication with Otake, he was not adequately informed prior to entering into his cooperation and plea agreements.   *See* Dkt. No. 533-2 at 4.   In particular, he claims to have been misinformed about the drug quantities for which he would be held responsible.   *See* Dkt. No. 533-1 at 27–30; *see also* Dkt. No. 533-2 at 4.   He also alleges that Otake misled him as to his sentencing exposure should he plead guilty.   *Id.* at 10–11; Dkt. No. 533-1 at 30–31 (arguing Otake "grossly mischaracterized" Wilcox's potential sentence).

On April 22, 2021, following an order concerning the waiver of the attorney-client privilege (Dkt. No. 543), the Government filed its opposition to Wilcox's motion, including a sworn declaration from Otake.   Dkt. No. 548.   Otake disputes Wilcox's claims that he failed to provide Wilcox with information as to the evidence against him and to discuss his options, including entering into proffer and

---

[5]The Court continued Wilcox's February 17, 2021 sentencing hearing to fully evaluate his objections, notwithstanding their tardiness.   *See* Dkt. No. 521.   Sentencing is currently scheduled for June 17, 2021.   Dkt. No. 536.

12

plea agreements.   Dkt. No. 548-1 at 2–5.   Further, Otake claims that, while

Wilcox's goal was to obtain a plea agreement holding him accountable for only

some of the drugs recovered and charged by the Government, Otake "never made

Wilcox any assurances as to whether the final presentence investigation report

would or would not hold Wilcox accountable for the disputed drug quantities."

*Id.* at 4.   Based on Wilcox's Plea Agreement and representations at his August 5,

2019 change of plea hearing, as well as Otake's declaration disputing Wilcox's

recent claims, the Government argues Wilcox has not demonstrated a fair and just

reason to allow him to withdraw his guilty plea.   Dkt. No. 548 at 12–13.

  Wilcox had until May 7, 2021 to file a reply to the Government's opposition.

Dkt. No. 535.   He failed to meet this deadline but moved the Court on May 12,

2021 to allow the late filing of his reply.   Dkt. No. 558.   The Court granted that

motion in part, Dkt. No. 564, and has considered Wilcox's reply and its

attachments to the extent they do not raise issues that were not present in Wilcox's

original motion.   On May 18, 2021, the Court heard oral argument on Wilcox's

motion.   *Id.*   This order follows, detailing the Court's bench ruling denying the

motion.

## LEGAL STANDARD

  A defendant may withdraw from a plea of guilty before sentencing if "the

defendant can show a fair and just reason for requesting the withdrawal."   Fed. R.

Crim. P. 11(d)(2)(B).   "The burden of demonstrating such a fair and just reason rests with defendant; however, the standard is applied liberally."   *United States v. Jones*, 472 F.3d 1136, 1141 (9th Cir. 2007) (citing *United States v. Davis*, 428 F.3d 802, 805 (9th Cir. 2005)).   "Fair and just reasons for withdrawal include inadequate Rule 11 plea colloquies, newly discovered evidence, intervening circumstances, or any other reason for withdrawing the plea that did not exist when the defendant entered his plea."   *See United States v. Ortega–Ascanio*, 376 F.3d 879, 883 (9th Cir. 2004).   However, a mere change of heart about the decision to plead guilty is not a fair and just reason.   *United States v. Rios–Ortiz*, 830 F.2d 1067, 1069 (9th Cir. 1987); *United States v. Maxwell*, 498 F.3d 799, 802 n.3 (8th Cir. 2007); *United States v. Washington*, 480 F.3d 309, 316–17 (5th Cir. 2007).   In the Ninth Circuit, "a defense counsel's erroneous advice may warrant withdrawing a plea even if the defendant does not prove that he would not have pleaded guilty but for the erroneous advice."   *Davis*, 428 F.3d at 808.

Statements made during a plea hearing are entitled to a strong presumption of veracity in later attacks on the plea, *United States v. Ross*, 511 F.3d 1233, 1236–37 (9th Cir. 2008) (citations omitted), and a court may consider the time elapsed between the entering of such a plea and the defendant's withdrawal request, *United States v. Garcia*, 401 F.3d 1008, 1013 (9th Cir. 2005) (citations omitted). Ultimately, each case must be reviewed in the context in which the motion to

withdraw guilty plea arose to determine whether a fair and just reason exists to permit withdrawal.   *United States v. McTiernan*, 546 F.3d 1160, 1167 (9th Cir. 2008).

## DISCUSSION

While Wilcox generally laments the limited communications he had with Otake that led to uninformed decisions to enter into proffer and plea agreements with the Government, his motion to withdraw focuses on a singular issue: the quantity of methamphetamine for which he bears responsibility (which, in turn, drives the applicable sentencing guideline range).   It is from this concern that all of his arguments emanate.   Wilcox argues that he did not want to be responsible for more than half the quantity of methamphetamine attributed to him by the PSR, and he instructed Otake to negotiate the appropriate adjustment in his Plea Agreement.   Wilcox claims that he was not aware that Otake was only partially successful, inferring that he would not have pled had he known.

Wilcox's assertions, however, represent the classic case of buyer's remorse. His position is contradicted not only by Otake's declaration, but by the text of his Plea Agreement and by his own conduct and statements during his colloquy with the Court at his change of plea hearing.   The Plea Agreement, for instance, does not contain a sentencing stipulation that limits the quantity of drugs for which Wilcox may be held responsible.   Dkt. No. 344 at 11 ¶ 10(b) ("The parties further

agree that Defendant is responsible for *not less than* 3,880 grams of actual

methamphetamine . . . and 1,393 grams of cocaine" (emphasis added)).   Even if it

did, the Court explicitly informed Wilcox that (1) it was not bound by any factual

or sentencing stipulations entered into by Wilcox and the Government; and (2)

neither the Court nor anyone else could, with any precision, determine Wilcox's

applicable offense level until after a presentence investigation report was prepared.

Dkt. No. 527 at 25–27.   That the PSR now attributes to Wilcox a quantity of

methamphetamine greater than 3,880 grams can hardly come as a surprise.

There simply was no ineffective assistance of counsel insofar as Wilcox's

methamphetamine responsibility is concerned.   He was explicitly aware of his

exposure through the Plea Agreement he signed and acknowledged having

evaluated with counsel, and he was explicitly aware of his exposure through his

discussions with the Court at the time of his plea.   Because Wilcox has failed to

demonstrate a fair and just reason for withdrawing his plea, his motion advocating

doing so is DENIED.

## I.   <u>Wilcox's Plea Was Knowing, Intelligent, and Voluntary</u>

A plea is valid if it "represents a voluntary and intelligent choice among the

alternative courses of action open to the defendant."   *United States v. Harpham*,

564 F. App'x 907, 908 (9th Cir. 2014) (quoting *North Carolina v. Alford*, 400 U.S.

25, 31 (1970)).   "Where, as here, a defendant is represented by counsel during the

16

plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Hill v. Lockhart*, 474 U.S. 52, 56–57 (1985) (quoting *McMann v. Richardson*, 397 U.S. 759 (1970)).

Wilcox's plea was knowing, intelligent, and voluntary. He acknowledged his sobriety and clarity at the time of his plea, he acknowledged that he understood the charges and the potential penalties he faced, he acknowledged the absence of coercion, force, or threat with respect to his plea decision, he acknowledged the waivers of trial and trial-related rights that are associated with pleading, he acknowledged the civil rights that he would likely lose upon acceptance of his plea, he acknowledged reading and understanding each of the terms of his Plea Agreement after having discussed the same with counsel, he acknowledged his understanding of the sentencing process and considerations, including the uncertainty created by the absence of a presentence investigation and report, he acknowledged that the Court would ultimately determine the applicable guideline range and sentence and that any comments in that regard from counsel would not bind the Court, he admitted to the factual basis for his plea, and he did not have questions regarding any of the above. *See generally* Dkt. No. 527.

The Rule 11 hearing was complete and thorough, and Wilcox does not claim otherwise. *See generally* Dkt. No. 533. Moreover, during the plea hearing,

Wilcox agreed—under oath—that he had "enough time to discuss [his] decision[]
whether or not to plead guilty, as well as this case generally[,] with Mr. Otake."
Dkt. No. 527 at 4–5.   He told the Court, again under oath, that he had read the
Plea Agreement in full, understood *each* of its provisions, which included a
description of the potentially applicable penalties, and understood that the Court
was not bound by any statement or stipulation as to relevant culpable conduct
when it came to sentencing.   *Id.* at 8–9, 25–27.   Such declarations in court, under
oath, carry a "strong presumption of verity" and contradict Wilcox's claims, for
example, that he was somehow rushed on the day of sentencing, had only five
minutes to review his Plea Agreement, and therefore did not appreciate the fact
that Otake was not able to make further headway with regard to negotiating the
methamphetamine quantity exposure that he faced.   *See United States v.
Rubalcaba*, 811 F.2d 491, 494 (9th Cir. 1987) (citation omitted); *accord See also
United States v. Ross*, 511 F.3d 1233, 1236–37 (9th Cir. 2008).

Wilcox's contemporaneous in-court attestations are consistent with Otake's
declaration.   Otake states that he met "with Wilcox extensively to review the
evidence and discuss [Wilcox's] decision to cooperate and plead guilty,"
"explained the pros and cons of cooperation," "discussed the plea agreement with
Wilcox on multiple visits prior to Wilcox's change of plea hearing," and
"thoroughly reviewed the final version of the plea agreement . . . clearly

18

communicat[ing] . . . which changes the Government had and had not agreed to make."  Dkt. No. 548-1 at 2–5.  Further, though Otake provided Wilcox with a rough estimate of how the sentencing guidelines might apply to him, *see* Dkt. No. 533-4, Otake represents that he "never made Wilcox any assurances as to whether the final presentence investigation report would or would not hold Wilcox accountable for the disputed drug quantities," and that he "reminded [Wilcox] that any stipulations as to drug amounts agreed to by the parties were not binding on the Court,"[6] Dkt. No. 548-1 at 5.

Wilcox's recent assertions that, due to poor communication with Otake, he did not fully understand his Plea Agreement and merely read from a script provided by Otake at his plea hearing without actually comprehending the proceeding[7] are simply not credible.  Among other things, the one-year period of less-than-ideal communications of which Wilcox complains ended in November 2018, *see* Dkt. No. 533-1 at 3, *a full ten months prior to Wilcox's plea*.  No similar claim is made regarding the months immediately prior to his plea, which, for

---

[6]Even if Otake had not reminded Wilcox of this fact, the Court did so:

|  |  |
|---|---|
| THE COURT: | Do you further understand that any stipulations in the plea agreement are stipulations between you and the U.S. Attorney's office and that the Court is not bound by those stipulations? |
| WILCOX: | Yes. |

Dkt. No. 527 at 10.

[7]Of course, the undersigned received and accepted Wilcox's plea and found him lucid and appreciative throughout.

19

purposes of this motion, would be the far more relevant period.   Further, not only are his recent representations at odds with the record and with his sworn statements at the change of plea hearing, but his delay in bringing this motion weighs against him.

The Court acknowledges that a delay alone does not dictate the denial of a defendant's efforts to withdraw a guilty plea.   Nonetheless, the Court may look to "a defendant's delay in moving to withdraw a plea as a barometer of the defendant's candor with the court about his reasons for withdrawal."   *United States v. Garcia*, 401 F.3d 1008, 1013 (9th Cir. 2005) (citation omitted).   Here, more than eighteen months passed between Wilcox's plea (August 2019) and his motion to withdraw that plea (March 2021).   The motion to withdraw comes on the heels of Wilcox's immediate prior filing in February 2021 (Dkt. No. 519), which objected to the PSR's 360 months - Life guideline range (Total Offense Level 39; Criminal History Category IV).   *See* Dkt. Nos. 419 at 39; *see also* Dkt. No. 526 at 42.   Clearly, it is this sentencing range, together with this Court's previously scheduled sentencing hearing on February 17, 2021, which motivated the current withdrawal effort, and not the sudden realization that Otake's conduct years earlier was somehow deficient.

The Court finds that Wilcox pled guilty while fully informed—by Otake, by the text of his Plea Agreement, and by the Court—that, at sentencing, he might be

20

held responsible for more than the limited drug quantity that he preferred to acknowledge.   Wilcox has presented no credible evidence to convince the Court otherwise.[8]   Indeed, considering Wilcox's representations at the August 5, 2019 change of plea hearing and its consistency with Otake's declaration, the Court concludes that Otake's representation was, at a bare minimum, "within the range of competence demanded of attorneys in criminal cases."   *See Hill*, 474 U.S. at 56–57 (citation and internal quotation marks omitted).   The record shows that Otake reviewed Wilcox's case with him, discussed cooperation and plea options, and explained Wilcox's possible sentencing exposure.[9]   It appears to the Court that Wilcox has simply had a change of heart in the face of a possibly long prison sentence.   But as the Court explained to Wilcox at his change of plea hearing, *see*

---

[8]Wilcox's additional claims that his Attention Deficit Disorder and inexperience in contract negotiations somehow explain his misunderstanding of the Plea Agreement, Dkt. No. 565 at 14; Dkt. No. 565-3 at 5–6, are not credible in light of his representations to the Court at his change of plea hearing that he had read and understood the terms of the agreement and that he had no questions.   Similarly, he acknowledges having collaborated with Otake to negotiate specific revisions to the Plea Agreement, which belie his disability-related claims.   Dkt. No. 565-3 at 5–6; *see also* Dkt. No. 533-2 at 16–19; Dkt. No. Dkt. No. 548-1 at 5.

[9]Wilcox seems to suggest—though he does not quite say—that Otake's representation was also deficient because Otake's client conflicts somehow prevented Wilcox from fully cooperating. Dkt. No. 533-1 at 19–22; Dkt. No. 533-2 at 25–28; Dkt. No. 565 at 16–17.   The record does not support this allegation.   If anything, the record shows that it was *Wilcox*'s own relationships that may have made him reticent to proffer information on persons in whom the Government was interested.   *See* Dkt. No. 533-2 at 26 (Wilcox explaining that Wayne Miller, a person the Government asked Wilcox about, had retained Otake on Wilcox's behalf); Dkt. No. 548-1 (Otake explaining that though Wilcox was "very concerned about cooperating against two individuals: Wayne Miller and Wayne Kahale," he "advise[d] Wilcox if he did not cooperate against Kahale, any potential downward departure motion would be adversely affected"); *see also* Dkt. No. 515-1 at 2 (the Government explaining that, at Wilcox's request, their proffer agreement did not require him to provide information on Kahale, despite the fact that Kahale was the suspected source of supply for the charged drug distribution conspiracy).

Dkt. No. 527 at 26–27, that is not a valid reason to permit him to withdraw his guilty plea.   *See Rios–Ortiz*, 830 F.2d at 1069.

## II.   Otake Did Not "Grossly Mischaracterize" Wilcox's Sentencing Exposure

It is well-established that an erroneous prediction by a defense attorney concerning sentencing generally does not entitle a defendant to withdraw his guilty plea.   *Garcia*, 909 F.2d at 1348; *United States v. Briggs*, 623 F.3d 724, 728 (9th Cir. 2010) ("We have previously expressed skepticism at the proposition that a defendant may change his plea solely because he underestimated the severity of the sentence he faced.").   The Ninth Circuit recognizes a limited exception to this rule, upon which Wilcox now relies, when there has been a "gross mischaracterization" of the likely outcome of the case.   *Davis*, 428 F.3d at 805; *see also Briggs*, 623 F.3d at 728–29 (applying *Davis* and limiting withdrawal based on an underestimation of the defendant's sentencing exposure to "exceptional circumstances").   In *Davis*, defense counsel told the defendant that his potential sentencing range was probation to eight years, and the defendant believed, based on counsel's advice, that if he pleaded guilty, he would receive probation.   *Davis*, 428 F.3d at 805.   However, there was "little, if any, possibility" of defendant receiving a sentence of probation because the court would have had to "depart 20 to 30 levels" to get there.   *Davis*, 428 F.3d at 806–07.

Thus, the court found the defendant's attorney had grossly mischaracterized his possible sentence.   *Id.*

This case bears no resemblance to *Davis*.   The sentencing guideline estimate Otake provided to Wilcox concluded that, before any *potential* downward departure for cooperation, Wilcox might have a base offense level of 35 if he: (1) was held responsible for only some of the drugs seized in relation to the case; (2) received a 2-level increase for being a leader/supervisor of the conspiracy; and (3) received a 3-level downward adjustment for acceptance of responsibility.   Dkt. No. 533-4.   Otake also estimated Wilcox would fall into criminal history category III.   *Id.*   Wilcox claims that Otake further estimated that after a "reasonable downward departure," Wilcox may possibly receive an imprisonment sentence of seven to ten years.[10]   Dkt. No. 533-1 at 9.

The most recent PSR finds Wilcox's offense level to be 38, reflecting a 4-level increase for being a supervisor/leader of a conspiracy with five or more participants and a 3-level decrease for acceptance of responsibility.   Dkt. No. 526

---

[10]The Court finds no support for this allegation in the record.   Wilcox *argues* in his briefs that Otake provided this estimate to him.   Dkt. No. 533-1 at 9; Dkt. No. 565 at 10 (citing to a paragraph of Wilcox's declaration that reads: "Mr. Otake further advised [Wilcox] that the chances of a substantial reduction of the sentence were good.").   However, this allegation appears nowhere in Wilcox's sworn declaration.   *See* Dkt. No. 533-2.   Otake represents that he "did not ever represent that [Wilcox] would receive a low sentence in this case."   Dkt. No. 548-1 at 6.   Moreover, the guideline range that results from Otake's total offense level 35/criminal history category III estimate (210 – 262 mos.) is nowhere close to "seven to ten years" and would require a departure of approximately seven levels to get there, a highly unlikely outcome, particularly given Wilcox's admitted reluctance to provide the Government with all he knew.

at 17.    The PSR also concludes that Wilcox fits into criminal history category IV.

*Id.* at 26 ¶ 83.    The Government has moved for an additional 1-level decrease due

to Wilcox's cooperation.    Dkt. No. 515.    Otake's sketch, in other words,

underestimated the PSR by one criminal history level and three offense levels (*e.g.*

two because of a greater aggravating role adjustment under U.S.S.G. § 3B1.1 and

one because of a greater drug weight conversion), nowhere close to the disparity in

*Davis*, where the Court found counsel's estimate "grossly mischaracterized" the

defendant's sentence because the court would have had to "depart 20 to 30 levels"

to get there.    *Davis*, 428 F.3d at 806–07; *see also Briggs*, 623 F.3d at 728–29

(affirming denial of motion to withdraw guilty plea where defendant stated he

expected a sentence in the range of 200 months' imprisonment, but the presentence

report calculated a guideline range of 360 months to life because defendant failed

to substantiate his allegations of inadequate legal advice, and, when he pled guilty,

defendant was aware that he faced a substantial term of incarceration).

On this record, the Court finds Otake did not grossly mischaracterize

Wilcox's sentencing exposure, and Wilcox was not misinformed.[11]    To the

contrary, it appears that Wilcox "only wanted to change his plea once he was face-

to-face with the full consequences of his conduct."    *See Briggs*, 623 F.3d at 729;

---

[11]Of course, Otake's estimate cannot be proved correct or incorrect until the Court rules on
whether to adopt the PSR and actually sentences Wilcox.    *See United States v. Oliveros-Orosco*,
942 F.2d 644, 646 (9th Cir. 1991).

*see also Nostratis*, 321 F.3d at 1211 ("Defendants cannot plead guilty to 'test the weight of potential punishment' and then withdraw their plea if the sentence is 'unexpectedly severe.'") (citation omitted); *Shah v. United States*, 878 F.2d 1156, 1162 (9th Cir. 1989) ("Nor do we believe that fear of receiving a harsh sentence, standing alone, constitutes a 'fair and just' reason to withdraw a plea, even if counsel's initial advice as to length of plea turned out to be inaccurate.").   Under these circumstances, Wilcox's sentencing expectations do not constitute a "fair and just reason" for withdrawal.

## CONCLUSION

For the foregoing reasons, Wilcox has failed to show that his guilty plea was invalid, or that there is some other fair and just reason for its withdrawal, and his Motion to Withdraw his Guilty Plea, Dkt. No. 533, is DENIED.

IT IS SO ORDERED.

DATED: May 21, 2021 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

*United States v. Wilcox*, Criminal No. 17-00555-DKW-1; **ORDER DENYING DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEA**