IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JUSTIN KAʻANOI *aka* Justin K. Wilcox,<br><br>Defendant. | Case No. 17-cr-00555-DKW-1<br><br>**ORDER DENYING MOTION FOR RECONSIDERATION** |

Petitioner Justin Kaʻanoi, proceeding *pro se*, seeks reconsideration of this Court's January 30, 2024 Order denying his motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody ("January 30 Order"). Dkt. No. 664. Specifically, Kaʻanoi asserts that he has newly discovered evidence indicating that his former attorney—Thomas Otake—lied during the Section 2255 proceedings with respect to Otake's participation in allegedly conflicting client representations. Review of Kaʻanoi's proffered evidence, however, reveals nothing of the sort and, certainly, no basis to alter the Court's prior reasoning. Accordingly, as more fully discussed below, the motion for reconsideration, Dkt. No. 664, is DENIED.

## FACTUAL & PROCEDURAL BACKGROUND[1]

On July 17, 2023, Petitioner Justin Kaʻanoi filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody. Dkt. Nos. 645–647. Therein, Kaʻanoi claimed, *inter alia*, that his attorney Thomas Otake rendered constitutionally ineffective assistance by deliberately engaging in conflicting client representations, thereby forcing him to withdraw and "abandon" Kaʻanoi following plea negotiations. Dkt. No. 646 at 38–42; Dkt. No. 647 at 29–31; Dkt. No. 647-1 at 4, 14–15.

On January 30, 2024, the Court denied Kaʻanoi's Section 2255 motion and request for an evidentiary hearing, finding, as relevant here, that he had failed to establish that Otake was operating under any actual conflict of interest. Dkt. No. 661 at 27–30, 43–44. The Court further denied a Certificate of Appealability ("COA") as "reasonable jurists would not debate the resolution of the Section 2255 motions." *Id.* at 44.

On March 4, 2024, Kaʻanoi filed the instant motion, claiming that newly discovered evidence "call[s] into question the integrety [sic] of Otake's sworn testimony that was in conflict with this Petitioner during the course of this colleteral [sic] attack," as well as the other factual bases on which the Court relied

---

[1] A factual and procedural history of this case leading up to the Court's January 30 Order is set forth therein and will not be repeated here. *See* Dkt. No. 661 at 2–8.

in issuing its January 30 Order.  Dkt. No. 664 at 21.  Consequently, Kaʻanoi asserts that he is entitled to reconsideration of his ineffective assistance of counsel claim, an evidentiary hearing as to the same, and the issuance of discovery and a subpoena on all matters related to his newly discovered evidence.  *See id.* at 21–28.

Pursuant to Local Rules 7.1(d) and 60.1, the Court elects to decide this matter without a hearing or further briefing.  This Order now follows.

## **STANDARD OF REVIEW**

Kaʻanoi brings the instant motion for reconsideration pursuant to Rule 59(e) of the Federal Rules of Civil Procedure.[2]  Dkt. No. 664 at 3; *see United States v. Martin*, 226 F.3d 1042, 1047 n.7 (9th Cir. 2000).  Reconsideration under this rule is "an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources."  *Kona Enters., Inc., v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (quotation marks and citation omitted).  Accordingly, reconsideration is generally only appropriate where "the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial

---

[2]Rule 59(e) provides that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of judgment."  Fed. R. Civ. P. 59(e).  Although Kaʻanoi's motion for reconsideration under Rule 59(e) was only received by the Court on March 3, 2024—more than 28 days after the entry of the January 30 Order—his motion is nevertheless timely under the prison mailbox rule, which provides that a motion filed by an incarcerated defendant is deemed filed as of the date it is given to prison authorities for mailing.  *See Houston v. Lack*, 487 U.S. 266, 275–76 (1988); Dkt. No. 664 at 29 (certifying Kaʻanoi placed his motion in the mail on February 22, 2024).

decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah Cnty. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). Although such motions are generally disfavored, *see* LR 60.1, "[w]hether or not to grant reconsideration is committed to the sound discretion of the court." *Navajo Nation v. Confederated Tribes and Bands of the Yakama Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003).

## **DISCUSSION**[3]

### **I. Reconsideration**

Kaʻanoi primarily seeks reconsideration of the Court's denial of his claim that Otake rendered constitutionally ineffective assistance of counsel by "intentionally labor[ing] under a conflict of interest" during the course of his representation.[4] *See* Dkt. No. 664 at 14. Specifically, Kaʻanoi originally asserted that during his final proffer session, the Government asked him for information on two individuals—Michael Miske and Wayne Miller. *See* Dkt. No. 661 at 28. At the time, Kaʻanoi had been reluctant to cooperate because he believed that Otake was friends with and/or represented both Miske and Miller. *Id.* at 28–29. In fact,

---

[3]As Kaʻanoi is *pro se*, the Court liberally construes his filings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

[4]Although Kaʻanoi references his dissatisfaction with the Court's resolution of his other ineffective assistance of counsel claims, he does not appear to seek reconsideration of the same through the instant motion. *See, e.g.*, Dkt. No. 664 at 14 n.4 ("Again, this is not a crux of the matter before the Court on reconsideration under Fed. R. Civ. P. 59(e), however, it is a matter that is reserved for appeal as is the Section 2255 Judgment in it's [sic] entirety under 28 U.S.C. § 2253(c)(2), and Fed. R. App. P. 22(b)(2).").

Miller had apparently retained Otake to represent Kaʻanoi on Miske's behalf.  *Id.* at 29.  Despite this, Otake reassured Kaʻanoi that there was no conflict of interest and urged him to provide any information he had.  *Id.*  According to Kaʻanoi, however, these assurances were a "bait-and-switch" tactic designed to permit Otake to later "abandon" him by withdrawing on just such basis.  *Id.*

The Court denied this claim in the January 30 Order, finding that despite Kaʻanoi's arguments, he had failed to show that "any *actual* conflict of interest existed during the course of Otake's representation."  *Id.*  In doing so, the Court relied on, *inter alia*, Otake's declaration:

> I am not friends with Miller and have never represented him.  On the contrary, [Kaʻanoi] stated that Miller was his close friend, and expressed to me that he did not want to cooperate against Miller because of the friendship.  I neither encouraged nor discouraged [Kaʻanoi] to cooperate against Miller.  However, if he chose to do so it would not have presented a conflict for me.
>
> . . .
>
> Early on in my representation of [Kaʻanoi], I discussed the possibility of a conflict of interest with [Kaʻanoi] arising from my representation of Michael Miske.  I did not have specific reason to believe a conflict existed, but I wanted to explore it with [Kaʻanoi] to be sure.  I was assured by my conversation with [Kaʻanoi] early on in my representation that there was no conflict.

Dkt. No. 656-1 at 4–5, 7–8; Dkt. No. 661 at 29–30.  Based on these and other representations, the Court found that any potential conflicts of interest arose only after Kaʻanoi began cooperating with the Government, and that Otake had acted

properly by encouraging Kaʻanoi to provide information on Miller and/or Miske to obtain a lesser sentence, even if it would necessitate his withdrawal from the case. Dkt. No. 661 at 29–30.

Now, Kaʻanoi asserts that he has obtained "newly discovered evidence" which "cooberate[s] [sic] everything that this Petitioner has asserted in his Section 2255 motion." Dkt. No. 664 at 20. Such evidence appears to largely consist of a blog post discussing Miller's testimony in Miske's ongoing and unrelated criminal trial. *See* Dkt. No. 644-1 at 7–13. According to Kaʻanoi, "Miller testified in open court that, he does in fact have a relationship with Thomas Otake prior to Petitioner's prosecution. Furthermore, thathe [sic] has in fact been conscripted from Miske, directing that he keep tabs on other criminal cases." Dkt. No. 644 at 7. Such testimony "shatters Thomas Otake's sworn testimony during and throughout . . . the Section 2255 process" that "he is not associated with these two individuals, i.e., Michael Miske, and Cooperator 1 (Wayne Miller)." *Id.* at 7, 19. Consequently, as "[t]his false statement has infected the lifeblood of this proceeding," Kaʻanoi requests that "this Honorable Court . . . reconsider it's [sic] decision anew." *Id.* at 21.

Contrary to Kaʻanoi's assertions, however, nothing in his description of Miller's purported testimony contradicts Otake's previous statements or indicate that Otake operated under an actual conflict of interest. Notably, during the

Section 2255 proceedings, Otake never denied *knowing* Miller—he simply denied representing him or having a personal friendship with him.  *See* Dkt. No. 661 at 29; Dkt. No. 656-1 at 4 ("I am not *friends* with Miller and have never *represented* him." (emphases added)).  Similarly, Otake explicitly *confirmed* that he had represented Miske, discussed that fact with Kaʻanoi early on in his representation, and correctly concluded that such representation did not pose a potential conflict of interest—until the Government sought information from Kaʻanoi regarding Miske that Otake did not know Kaʻanoi had.[5]  *See* Dkt. No. 661 at 29–30; Dkt. No. 656-1 at 7–8.  These statements are not inconsistent with Miller's alleged trial testimony.[6]  *See* Dkt. No. 664-1 at 8–9 (reporting that Miller testified that *he* considered Otake to be "one of [his] friends who helped [him] out with traffic tickets" and that he

---

[5]Kaʻanoi appears to additionally contend that the Court's decision to permit Otake to withdraw as counsel in Miske's case indicates that the Court should reconsider its denial of his conflict-of-interest claim.  *See* Dkt. No. 664 at 17–18; *United States v. Miske*, 2023 WL 2629104, at *2–4 (D. Haw. Mar. 24, 2023).  However, beyond generic assertions that such withdrawal confirms that Miske used Otake "to verify the interworking's [sic] of other 'alleged criminal's [sic] cases' for his own personal satisfaction," Kaʻanoi fails to explain how Otake's withdrawal in an *entirely unrelated* case evinces that Otake had an unconstitutional conflict of interest while representing him.  Dkt. No. 664 at 17.  Otake's withdrawal in *United States v. Miske*, CR19-00099 (D. Haw.), a case over which the undersigned presides, had nothing to do with Kaʻanoi.  As such, the Court does not find that this constitutes a basis for reconsideration.

[6]Moreover, to the extent Kaʻanoi argues that Miller's testimony indicates that Miske specifically "conscripted" Otake to keep tabs on other cases, there is *no* evidence, other than a blogger's speculations, that this is the case.  *See* Dkt. No. 664 at 7, 17–18; Dkt. No. 664-1 at 13 (commenting that "[i]t appears Miske referred associates to his favored attorneys when they were in legal trouble, and at times even paid their legal fees.  And then Miske used his association with these attorneys to learn whether others were in fanger [sic] of 'flipping' or not.").

contacted Otake to see if he might be able to represent Kaʻanoi). As such, they do not form a basis for reconsideration.

Even assuming that Miller's testimony explicitly contradicted Otake's prior statements, Kaʻanoi's claim of ineffective assistance of counsel would still fail. To establish such a claim, "the defendant must show 1) that counsel actively represented conflicting interests, and 2) that an actual conflict of interest adversely affected his lawyer's performance." *Mannhalt v. Reed*, 847 F.2d 576, 579 (9th Cir. 1988) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 348, 350 (1980)). An "actual conflict of interest" under this standard is "a conflict *that affected counsel's performance*—as opposed to a mere theoretical division of loyalties." *United States v. Wells*, 394 F.3d 725, 733 (9th Cir. 2005) (quotation marks and citations omitted); *see also Wood v. Georgia*, 450 U.S. 261, 271–72 (1981) (explaining that although an attorney's acceptance of client fees from a third party may pose a theoretical division of loyalties, the defendant must still show an actual conflict of interest). In other words, "the defendant must show that counsel was influenced in his basic strategic decisions by loyalty to another client or former client" such that "some plausible alternative defense strategy might have been pursued but was not and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." *Wells*, 394 F.3d at 733 (quotation marks and citations omitted).

Here, even under the circumstances Kaʻanoi alleges, any potential *actual* conflict of interest would only have arisen once the Government asked Kaʻanoi for information regarding Miller and/or Miske.  See Dkt. No. 661 at 30.  At such point, it would have been entirely proper for Otake to encourage Kaʻanoi to cooperate to his benefit and to withdraw to permit Kaʻanoi to do so.  As the Court already explained to Kaʻanoi, rather than "abandoning" him, Otake's withdrawal allowed him to "pursue the route that gave him the best chance at the best downward departure" with a new attorney.  *See id.*; Dkt. No. 656-1 at 8.  Accordingly, any claim of ineffective assistance of counsel on this ground is simply unavailing.

In sum, Kaʻanoi has failed to show that there is any basis supporting reconsideration of his claim.  His motion for reconsideration is therefore denied.

## II.     <u>Evidentiary Hearing, Subpoena, and Discovery</u>

In addition to reconsideration of his Section 2255 motion, Kaʻanoi requests: (1) an evidentiary hearing; (2) the issuance of a subpoena for Miller's testimony and various records relating to Miller, Otake, and Miske; and (3) additional discovery as to the same.  Dkt. No. 664 at 8–9, 22–29.  Such undertakings, however, are plainly unnecessary in light of the Court's resolution of Kaʻanoi's motion for reconsideration.  *See* Rule 6(a) of Rules Governing Section 2255 Proceedings (permitting discovery only upon a showing of good cause); 28 U.S.C. § 2255(b) (explaining that the Court need not hold an evidentiary hearing where

"the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."). Accordingly, these requests are also denied.

## CONCLUSION

For the reasons set forth herein, Ka'anoi's motion for reconsideration and requests for an evidentiary hearing, subpoena, and discovery, Dkt. No. 664, are DENIED.

IT IS SO ORDERED.

DATED: May 8, 2024 at Honolulu, Hawai'i.



Derrick K. Watson
Chief United States District Judge

---

*United States of America v. Justin Ka'anoi aka Justin K. Wilcox*; Cr. 17-00555 DKW-1; **ORDER DENYING MOTION FOR RECONSIDERATION**